LEE, C.J.,
for the Court:
¶ 1. Bennie Beal was convicted of deliberate-design murder, with a firearm enhancement, and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, twenty years suspended, and five years of supervised probation. On appeal, Beal argues that the evidence was insufficient to support the verdict and that his trial counsel was ineffective for failing to request a castle-doctrine jury instruction. We find no error and affirm,
FACTS AND PROCEDURAL HISTORY
¶ 2. On September 5, 2011, Latoya-Travis went to pick up her sixteen-year-old sister, Evonye, so Evonye could go pay her cellular phone bill. Latoya’s thirteen-year-old brother, Demarco Travis, was a passenger in the car. When Latoya arrived, the three siblings encountered their cousins, sixteen-year-old Beal and seventeen-year-old Bennie Banks. The two brothers .asked to ride with the Travises on their errands, and Latoya agreed.
¶ 3.' Evonye suggested that'Latoya stop at the nearby Shell gas station on Terry Road in Jackson, Mississippi, to purchase gas for Latoya’s car. Evonye provided $10-$5 for gas and $5 for cigarettes. Beal went inside- the store, purchased cigarettes, and gave the clerk $5 for the gas, but when he went outside, the pump would not turn on.- . While Beal waited at the pump, Banks went to ask the clerk to turn on the pump. The clerk activated the pump, but the pump failed to 'shut off automatically ¡at $5. ■ Beal pumped $9.74 worth of gas. Beal then got into the backseat of Latoya’s car and sat in the middle.
¶ 4. The store’s owner, forty-nine-year-old Dilip Patel, came out of the store, demanding payment of the remaining $4.74. At this point, the teens'were all sitting in LáToya’s green'Volvo, except Banks, who was trying to enter the backseat on the driver’s side. They claim that Evonye tried to pull out her wallet to pay Patel, but Patel walked to the passenger-side backseat door, reached over Demarco, and began hitting and pulling :on Beal. Although Patel was unarmed, the teens said another' man also came out of the store and was standing behind Patel with a gun “on his waist” or “on his side.”[1]
¶ 5. Two other eyewitnesses, Chris Na-sif and Caleb Rhymes, dispute this testimony. Nasif, a salesman who routinely called on the gas station, said he overheard the clerk tell Patel he thought someone was trying to steal gas, and he saw Patel *1280 go outside. Nasif recorded the license-plate number of Latoya’s green Volvo in case they attempted to leave without paying. Rhymes, a patron, also saw Patel walk up to the Volvo. Both Nasif and Rhymes said that Patel never hit Beal but was merely trying to get Beal to come inside and pay.
¶ 6. While Patel was confronting Beal, Beal reached into his waistband and pulled out a .25-caliber handgun he had found at his grandmother’s home. He shot at Patel several times. One of the bullets hit Patel directly in the forehead. Patel fell to the ground and died. Latoya testified she believed the gunshots were from the man standing behind Patel, so she immediately sped away from the store. None of the other teens knew Beal was carrying a weapon. They continued with their errands and returned to their grandmother’s home. Latoya parked behind the house.
¶7. Jackson police officers were dispatched to the scene of the shooting. Sergeant Lance Felton, one of the officers who responded, canvassed the neighborhood near the gas station, looking for the green Volvo described by witnesses. Sergeant Felton was familiar with the family in question and had a good rapport with them; so when he spotted Latoya and Evonye, and they appeared to be surprised by his presence, he stopped to question them. He then noticed the green Volvo and called for assistance. The family members cooperated with police, providing statements. Beal, who had no prior criminal record, was arrested and confessed that he shot Patel because he felt threatened and was “paranoid and didn’t know what to do when the man was hitting him.”
¶ 8. Beal was charged with deliberate-design murder, with a firearm enhancement. A jury trial was held in Hinds County Circuit Court on December 2-4, 2013, and Beal was found guilty as charged. Beal faced a potential life sentence. However, because he was a minor, he was entitled to a hearing under the mandates of Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), prior to sentencing. Effective July 1, 2013, the Legislature amended the murder statute to provide new offenses of first- and second-degree murder. Beal waived the Miller hearing in exchange for a reduced sentence under the second-degree-murder sentencing statute. See Miss.Code Ann. § 97-3-21(2) (Rev.2014) (stating that the jury can sentence the defendant to life for second-degree murder, but if the sentence is set by the judge, the term shall not be less than twenty nor more than forty years). Beal was sentenced to forty years in the custody of the MDOC, with twenty years to serve, twenty years suspended, and five years of supervised probation.
DISCUSSION
I. Sufficiency of the Evidence
¶ 9. Beal argues that, under the circumstances of this case, the jury should have been instructed under the castle doctrine that he was presumed to have feared for his life at the time he shot Patel. See Miss.Code Ann. § 97-3-15(3)-(4) (Rev. 2014); Newell v. State, 49 So.3d 66, 74 (¶ 22) (Miss.2010) (The castle doctrine “creates a presumption of fear and abridges a duty to retreat in certain prescribed circumstances.”). Beal contends that in light of this presumption of fear, the evidence did not support his murder conviction, and the jury’s verdict should be reversed and rendered. Alternatively, Beal asserts that, at the most, he was guilty of manslaughter.
*1281 ¶ 10. Despite Beal’s argument on appeal regarding the castle doctrine’s presumption of fear, we note that Beal did not request nor was he given a castle-doctrine jury instruction at trial. Rather, he proceeded under a theory of self-defense, for which no presumption of fear is given. Beal’s failure to request a castle-doctrine jury instruction precludes review of this issue on appeal. See King v. State, 857 So.2d 702, 717 (¶ 24) (Miss.2003) (“A trial court has no duty to give unrequested instructions. Therefore, this contention is procedurally barred.”). Further, as will be discussed in issue two, the evidence did not support the application of the castle doctrine. Because Beal did not request, nor was he entitled to, a jury instruction on the presumption of fear contained in the castle doctrine, we will examine Beal’s suffieiency-of-the-evidence argument with regard to his murder conviction under the instructions and law presented to the jury.
¶ 11. In determining whether the evidence at trial is sufficient to sustain a conviction, we must examine “whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). “[A]ll évidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence.” Graham v. State, 185 So.3d 992, 1003 (¶ 32) (Miss.2016) (quoting Galloway v. State, 122 So.3d 614, 665 (¶ 168) (Miss.2013)).
¶ 12. When reviewing the sufficiency of the evidence, we will reverse and render a conviction only if “the facts and inferences ... ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]’” Bush, 895 So.2d at 843 (¶ 16) (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if “‘reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. (quoting Edwards, 469 So.2d at 70).
¶ 13. To support Beal’s deliberate-design murder conviction, the evidence must be sufficient to show “beyond a reasonable doubt that (1) [Beal] killed [Patel], (2) without the authority- of law, and (3) with deliberate design to effect [Patel’s] death.” Jones v. State, 154 So.3d 872, 880 (¶ 26) (Miss.2014); Miss.Code Ann. § 97-3-19(1)(a) (Supp.2015). The supreme court has defined “deliberate design” as follows:
“Deliberate design” is synonymous with “malice aforethought” and connotes an intent to kill. Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent. It is well[ ]established that malice, or deliberate design, may be inferred from the use of a deadly weapon. Deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which[,] based on its manner of use, is calculated to produce death or serious bodily injury.
Holliman v. State, 178 So.3d 689, 698 (¶ 19) (Miss.2015) (internal citations and quotation marks omitted). Deliberate design is inferred by “the acts of the person *1282 involved at the time, and by showing the circumstances surrounding the incident.” Id. (quoting Boyd v. State, 977 So.2d 329, 335 (¶ 23) (Miss.2008)). “If sufficient. evidence exists that the shooter pulled, the trigger with intent to kill, then the killing is [deliberate-design] murder.” Id. at 699 (¶ 22).
¶ 14. After paying $5 for gas at the Shell station, Beal pumped $9.74 worth of gas. He then got back into Latoya’s car and sat in the middle of the backseat. Patel was alerted that someone was trying to steal gas. Patel ran out to confront Beal. Beal heard Patel say, “you got to pay me.” It is disputed whether a physical altercation took place between Patel and Beal after this. In his statement to police, Beal stated that Patel “pull[ed] his shirt and when [he] pulled away[,] [Patel] hit [him] in the face.” Beal’s witnesses— Latoya, Evonye, and Demarco—also testified that Patel leaned into the car through the back passenger door, pulled Beal’s shirt, and hit him. However, two other witnesses present at the gas station testified Patel did not hit anyone. Rather, they testified that Patel verbally confronted Beal and was shaking his index finger up and down at Beal. Also, Detective Obie Wells, who saw Beal shortly after the incident occurred, testified Beal had no visible injuries or any tears to his clothing that were consistent with Beal’s version of events.
¶ 15. Shortly after the altercation began, Beal reached into his waistband, pulled out a concealed gun he had taken from his grandmother’s home and was illegally carrying, and shot at Patel multiple times, fatally hitting him once in the forehead. Beal then dropped the gun in the gas-station parking lot and fled with the other teens. He went about his business and did not report the incident to anyone. Beal does not contest that he shot Patel, and he admitted in his statement to police that he knew Patel was unarmed. He also admitted to police that Patel , was outside the car when he shot him. Also, in his statement to police, Beal described a prior altercation with Patel, stating, “in June[,] I paid for some gas and [Patel] stated the gas already pumped, so my sister just left and went to the gas station across the street.”
¶ 16. Viewing the evidence in the light most favorable to the State and taking the evidence ’ supporting the verdict and any reasonable inferences as true, we find that a rational jury could have concluded thát Beal was guilty of murder' beyond a reasonable doubt and did not act in self-defense'. Because we find the evidence sufficient to support Beal’s murder conviction, we need not address his alternative argument that the evidence, at the' most, supported a manslaughter conviction. This issue is without merit.
II. Ineffective Assistance of Counsel
¶ 17. -Beal argues his counsel was ineffective for failing, to, request a castle-doctrine jury instruction.. To prove his counsel was ineffective, Beal must show (1) his counsel’s performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. at 689, 104 S.Ct. 2052. A strong but rebuttable presumption exists that counsel’s performance was effective, Gilley v. State, 748 So.2d 123, 129 (¶ 20) (Miss.1999), “To overcome this presumption, ‘the defendant must show that there is a reasonable probability that, but for *1283 counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
¶ 18. “Attorneys are permitted wide latitude in their choice and employment of defense strategy.” Hiter v. State, 660 So.2d 961, 965 (Miss.1995). “Traditionally, trial, , counsel’s decision regarding whether-to request certain, jury instructions is considered trial strategy.” Taylor v. State, 109 So.3d 589, 596 (¶ 27) (Miss.Ct.App.2013). Further, when reviewing jury instructions on appeal, this Court does “not review jury instructions in isolation; rather, we read them as a, whole to determine if the jury was properly instructed.” Wilson v. State, 967 So.2d 32, 36 (¶ 11) (Miss.2007) (citation omitted). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. (citation omitted). “Our law is well settled that jury instructions are not given unless there is an evidentiary basis in the record for such.” Dedeaux v. State, 630 So.2d 30, 33 (Miss.1993).
¶ 19. The castle doctrine is set out in Mississippi Code Annotated section 97-3-15(3)-(4). The castle doctrine, as revised effective July 1, 2006, “curtailed the duty to retreat and created a presumption that the defendant reasonably feared imminent death, great bodily harm, or the commission of a felony upon him from a person who has unlawfully and forcibly entered the immediate premises of a dwelling, [occupied vehicle, business, or place of employment].” Newell, 49 So.3d at 74 (¶ 22) (quoting Johnson v. State, 997 So.2d 256, 260 n. 2 (Miss.Ct.App.2008)). The castle doctrine states:
(3) A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the- person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or. the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person’s will from that dwelling, ..occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.. This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity or if the person is a law enforcement officer engaged in the performance of his official duties[.]
(4) A person who is not.the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (l)(e) or (f) of this section if the person is in a place where the person has a right to be, .and no finder of fact *1284 shall 'be permitted to consider the person’s failure to retreat as evidence that the person’s use of force was unnecessary, excessive or unreasonable.
Miss.Code Ann. § 97-3-15(3)-(4).
¶ 20. Two prongs must be satisfied for the castle doctrine to apply. Under the first prong, the defendant must show three things: (1) he was “where he had a right tó be,” (2) he was “not the immediate provoker and aggressor,” and (3) he was “not engaged in unlawful activity.” Newell, 49 So.3d at 74 (¶ 22) (citing Miss.Code Ann. § 97-3-15(4)). If these conditions are met, then under the second prong, the defendant “is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him,” if the jury finds any of the circumstances of 97-3-15(3) apply—that is, if the person is in his dwelling, a vehicle, or place of business or employment, or the immediate premises thereof, and the person against whom defensive force is used was in the process of unlawfully and forcibly entering the premises or attempting to remove another from such premises. Newell, 49 So.3d at 74 (¶ 22).
¶ 21. The first prong of the castle doctrine clearly states that the presumption in prong two “shall not apply ... if the person who uses defensive force is engaged in unlawful activity[.]” Miss. Code Ann. § 97-3-15(3). Beal, through his own admission, was engaged in unlawful activity when he shot Patel. It is undisputed that Beal was in violation of Mississippi Code Annotated section 97-37-14(1) (Rev.2014), possession of a handgun by a person under eighteen. Beal was sixteen years old at the time of the shooting, and he admitted he took the gun from his grandmother’s house. Hé then concealed the gun in the waistband of his pants and used the gun in the commission of the murder. In Beal’s motion for a directed verdict, Beal’s counsel recognized the violation. The trial judge asked, “is the defendant entitled at [sixteen] to have a gun in his possession at all?” Counsel responded, “No, Your Honor, he is not authorized to do so.” Also, Beal was in violation of Mississippi Code' Annotated section 97-32-9 (Rev.2014), purchase of tobacco by a minor, as he was under eighteen when he purchased cigarettes at Patel’s store. Further, Beal was arguably in the’ process of stealing gas from Patel’s store, which led to the shooting. The fact that Beal was not charged with these crimes is irrelevant. As it is clear Beal was engaged in unlawful activities, the castle doctrine was inapplicable, and Beal was not entitled to a jury instruction on the presumption of fear set out in prong two. For this reason, we cannot find his counsel was ineffective for failing to request a castle-doctrine instruction.
¶ 22. In addition to the fact that Beal was engaged in multiple unlawful activities, we cannot find the facts of this case support application of the castle doctrine as intended by the Legislature. The purpose of the castle doctrine is to allow a person to stand his ground against an intruder who is unlawfully trying to enter that person’s home, the vehicle the person is occupying, or the person’s business or place of employment. Beal was a customer at Patel’s store. Beal knowingly pumped more gas than he paid for and got back into his cousin’s car. Patel, who was at his place of business, approached the car to confront Beal. Beal was armed, illegally, with a .25-caliber handgun. Patel was unarmed. Beal knew Patel was unarmed. Patel verbally confronted Beal, telling him to pay for the gas.
*1285 ¶ 23. Although Beal and the car’s passengers claim that Patel reached in the car and hit Beal, there was no evidence of a physical altercation. Two other witnesses described the exchange as a “verbal altercation.” Beal admitted that Patel was outside the car when he shot him. Three shell casings were recovered from the scene near Patel’s body, all from Beal’s gun. The autopsy report showed Patel died from a “distant-type gunshot wound to the forehead.” Just before Patel was shot, he had been talking to Nasif about placing a food order for the store. Patel had written the order on a torn piece of a cigarette box. When Patel went outside to confront Beal, Nasif saw the car “jolt[ ]” forward and stop before he heard “boom, boom, boom”; then the car drove off. Na-sif was standing approximately five feet from the car, as he had positioned himself to write down the vehicle’s tag number. He testified Patel was “standing at the back passenger door,” and “he was talking” and pointing and shaking his index finger up and down. He did not see Patel strike anyone or reach inside the vehicle. Patel still had the handwritten order in his hand when he was shot.
¶24. After the shooting, Beal went about his business without reporting the incident. He and the other teens proceeded to the store to pay the cell-phone bill, as originally intended, and then went back to Winter Street. On the way, Latoya saw her mother walking toward the Shell. Her mother said she was going to the Shell because someone had been shot there. Latoya said nothing and proceeded to her grandmother’s house. She later told her grandmother what had happened. After the shooting, Sergeant Felton drove down Winter Street, looking for someone familiar with the incident to interview. He saw Latoya and Evonye. Instead of speaking to him as they usually did, they “looked at [him]” with “a surprised] look on then-facets], and they turned and ran back in the house,” which “surprised” Sergeant Felton and “threw him off.” These facts are not representative of a situation where the castle doctrine would apply.
¶25. Beal’s counsel chose to pursue a self-defense theory rather than a defense theory under the castle doctrine. Beal’s counsel requested jury instruction D-l on self-defense, which was given by the trial court. See Miss.Code Ann. § 97—3—15(l)(f) (Rev.2014). Instruction D-l states:
The [c]ourt instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then it is your sworn duty to return a verdict of NOT GUILTY in favor of the defendant.
The self-defense instruction was permitted based on the facts of this case, and it presented Beal’s theory of defense.
¶ 26. Beal’s counsel also requested, and was given, instruction D-6, which provided an instruction similar to the castle doctrine, D-6 states:
The [c]ourt instructs the jury [that] a person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before *1286 using deadly force if the person is -in a place where the person has a right to be, and you are not permitted to consider the [defendant's failure to retreat as evidence that the [defendant's use of force was unnecessary, excessive or unreasonable.
Again, this instruction presented Beal’s theory of defense, and it contained the elements.,of the castle doctrine, with the exception of the presumption of fear.
¶ 27. As stated, counsel’s decision “[w]hether to request a certain, [jury] instruction generally is a matter of trial strategy.” McCoy v. State, 147 So.3d 333, 347 (¶ 36) (Miss.2014). Accordingly, the intentional, failure to request a certain instruction is presumed, to be .trial strategy. Id. We review matters of trial strategy on direct appeal only if “the record - affirmatively shows ineffectiveness of constitutional dimensions.” Taylor v. State, 167 So.3d 1143, 1146 (¶ 5) (Miss.2015). If the record does not show ineffectiveness of constitutional dimensions, the alleged ineffectiveness claim must be brought in postconviction proceedings to “give [counsel] a fair opportunity to explain any possible strategy in foregoing to request such an instruction.” McCoy, 147 So.3d at 347 (¶ 36); see also Taylor, 109 So.3d at 596 (¶¶ 26-27) (finding counsel’s failure to request an alibi instruction, although alibi was one of defendant’s theories of defense at trial, was trial strategy, for which counsel was not held ineffective on direct appeal).
¶28. Beal’s counsel had multiple reasons to decline to request a castle-doctrine instruction. First, the castle doctrine did not apply because Beal was engaged in not one, but multiple, unlawful activities at the time of the shooting. Second, Patel was on his own property at the gas station, and the evidence presented by the State showed Patel was outside the car in a -verbal- altercation with Beal -when he was shot. Third, Beal’s theory of defense was covered elsewhere in the given jury instructions.
1129. Giving deference to counsel’s choice of trial strategy, coupled with the fact .that the castle doctrine was inapplicable to Beal’s defense, we cannot find that Beal’s counsel was ineffective for failing to request' a castle-doctrine instruction. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF MURDER, WITH A FIREARM ENHANCEMENT, AND SENTENCE OF- FORTY YEARS- IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, TWENTY YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
GRIFFIS, P.J., ISHEE, CARLTON, FAIR, JAMES and GREENLEE, JJ„ CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J.,, DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P. J.

. Jackson police later found a ,40-caliber Smith & Wesson handgun inside the store. It belonged to one of the store’s coowners and was located on the clerk’s side of the plexiglass at the counter.