# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00915-COA

**DOUGLAS CRAFT A/K/A DOUGLAS S. CRAFT**           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

DATE OF JUDGMENT:     04/14/2022
TRIAL JUDGE:     HON. STANLEY ALEX SOREY
COURT FROM WHICH APPEALED:     SMITH COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     JOHN R. REEVES
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
     BY:  ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:     CHRISTOPHER DOUGLAS HENNIS
NATURE OF THE CASE:     CRIMINAL - FELONY
DISPOSITION:     AFFIRMED - 02/04/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND WEDDLE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     On July 8, 2018, Douglas Craft shot and killed Austin Spivey. Craft was later indicted for first-degree murder by a Smith County grand jury on October 22, 2018. At trial, Craft argued that he acted in self-defense. He was ultimately convicted of second-degree murder and was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). Craft filed a motion for a new trial or judgment notwithstanding the verdict. Almost a year later, he filed an amended motion for a new trial or judgment notwithstanding the verdict. The trial court denied both motions. Craft now appeals, arguing that the trial court erred in denying his motion for a directed verdict and allowing certain jury instructions. He also asserts that the verdict was against the overwhelming weight of the

evidence and that he received ineffective assistance of counsel. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. K.Y. and Rosanna Craft lived in the northern part of Smith County, Mississippi. During their marriage, they had nine children: Roosevelt, Bobby, Douglas (Craft), K.Y. Jr., Lucille, Jo Ann, Tammy, Bernice, and Tracy. A few of the siblings lived near K.Y. and Rosanna, and the others lived outside Smith County. Jo Ann lived in a home across the road from her parents. She testified that she lived about fifty yards away from her parents' home, and she could get to her parents more quickly than any of her siblings. There, she lived with her youngest son, Austin Spivey.

¶3. In June 2018, Rosanna passed away, leaving behind her husband and her nine children. Before she died, K.Y. had been diagnosed with dementia, so Rosanna had listed herself and Lucille as having his power of attorney. After Rosanna's passing, Lucille became the sole person with power of attorney. At trial, it was revealed that many of the siblings were hostile toward Lucille because of this authority. Craft testified, "[T]o keep everybody from jumping on Lucille, Roosevelt would come and stay almost a week, and then I would stay a week. We didn't leave Lucille alone with the rest of the family." Eventually, an argument erupted between Craft, Jo Ann, and Tammy regarding who would serve as the additional person with power of attorney for their father. When recalling the argument, Roosevelt explained, "They wanted two people to be on power of attorney. From what I understand, they couldn't have but one, and Momma and Daddy chose my sister Lucille. Well, they didn't want that. . . . I think Jo Ann, I think she wanted to be one."

2

¶4. Issues also arose regarding Rosanna's estate. Jo Ann testified, "[S]eem like to me when mother passed, all hell broke loose. The older brothers came back in to try to take over, and we was trying to come to some understanding as to what we were going to do with the property and the estate as a family." Jo Ann testified that prior to her mother's passing, the siblings were very close and communicated frequently. Jo Ann described them as a "close[-]knit family."

¶5. On July 8, 2018, Jo Ann decided to attend a revival at Good Hope Church, which was minutes from where she and her father lived. Spivey was home from college and had been working a summer job as a security officer at a plant in Morton, Mississippi. Jo Ann wanted Spivey to accompany her to church, but he informed her that he was too tired to attend after working a double shift. Food was served after the revival, so Jo Ann made a plate for Spivey, K.Y., and Lucille. Jo Ann went to K.Y.'s home to drop off the plates for him and Lucille. When she arrived, she saw her brothers Roosevelt and Craft sitting on the tailgate of Roosevelt's truck. She testified that there was a driveway leading directly to the house and five steps leading to a porch. Jo Ann walked up the porch and attempted to open the front door; however, it was locked. This agitated her, so she began beating on the door and cursing. Roosevelt scolded her and demanded that she stop banging on the door. Jo Ann testified that Roosevelt eventually ran to the porch, grabbed her by her throat, and dragged her down the steps to the ground.[1] He then pinned her down to the ground by putting his

---

[1] Roosevelt conceded that he grabbed Jo Ann and forced her to the ground. Photographs of Jo Ann's neck showing injuries from the day in question were introduced at trial. Roosevelt was later convicted of simple assault and received a six-month suspended sentence.

knee in her back and pulling her arms behind her. Jo Ann said this shocked her because he had never touched her in that manner. She also said that while they were on the ground, Craft squatted beside them and stared at her as she struggled to get away.

¶6. Spivey saw his mother being assaulted from across the yard. He yelled, "Get off my momma," and began to run toward her. Roosevelt and Craft claimed that Spivey approached Craft as if he was going to jump on him and questioned him about strong-arming with his mother. Craft got off his knees, warned Spivey to get back, and pulled a gun from his pants.[2] Craft testified that he only pulled the gun out to "deter" Spivey from coming closer. Jo Ann testified that when Spivey approached the end of her car and planted his feet, Craft shot him in the chest. Spivey fell backward onto her car and said, "Momma, take me to the hospital." He managed to climb into the car, and Jo Ann got in the driver's seat and rushed him to Scott Regional Hospital. He died about an hour later.

¶7. Investigator Jamie McClellan and other deputies from the Smith County Sheriff's Department were dispatched to the scene twenty minutes after the incident. When they arrived, Craft and Roosevelt were found outside the home. They revealed to Investigator McClellan that Craft had shot Spivey. When he inquired about the weapon, Lucille brought Investigator McClellan a .22-caliber revolver that was inside the home. Seven live rounds and one spent casing were recovered from the gun. Craft was then placed under arrest for aggravated assault. When they were informed that Spivey had died, the charge was upgraded to murder.

---

[2] Roosevelt testified that he did not see the gun in Craft's hands.

¶8. Spivey's body was transported to the State Medical Examiner's Office. Dr. Brent Davis conducted the autopsy on July 10, 2018. Dr. Mark LeVaughn independently reviewed the case file and generated an autopsy report. He determined that the cause of death was a gunshot wound to the chest, and the manner of death was homicide. Dr. LeVaughn testified:

> The internal examination showed that the bullet passed through the chest wall, went through the left lung, the heart, went through the back of the chest wall and exited. . . . And in that wound path, it injured the left lung and heart, and that produced a massive amount of hemorrhage in the chest cavity. There was no bullet recovered. But due to the injury of the internal organs, the heart and lungs, he bled to death.

Dr. LeVaughn also testified that blood samples were taken from Spivey and submitted for testing at the Mississippi Forensics Laboratory. The toxicology report revealed that marijuana was present in Spivey's system.

¶9. Craft was ultimately indicted for first-degree murder on October 22, 2018. Trial commenced in the Smith County Circuit Court on April 12, 2022. Despite several family members being present at the scene on the day in question, Jo Ann and Roosevelt were the only ones to testify for the State.

¶10. After the State rested, Craft moved for a directed verdict. The court denied the motion and advised Craft of his right to testify in his own behalf, which he ultimately did, and he was the only witness to testify for the defense. Craft asserted a self-defense theory, claiming that on the day in question, he was afraid of Spivey. When recalling the incident, he testified:

> He continued to come on, and he made the statement, "You pulled a gun. I'm going to take that from you." And I'm steadily backing up. I'm backing up. "Get back. Please stop. Just stop. Back up." And as I'm backing up, my heal caught in this loose gravel there, and at this same time that I am stumbling backwards, he's like lunging forward. And as I was trying not to lose my

5

balance, that's when the gun fired.

¶11. The Smith County Circuit Court jury ultimately found Craft guilty of second-degree murder, and he was sentenced to serve twenty-five years in the custody of the MDOC. On April 25, 2022, Craft filed a motion for a new trial or judgment notwithstanding the verdict. On February 21, 2023, Craft filed an amended motion for a new trial or judgment notwithstanding the verdict. The trial court denied both motions on July 13, 2023. Aggrieved, Craft now appeals.

## DISCUSSION

### I.     Sufficiency of the Evidence

¶12. "A motion for a directed verdict [or judgment notwithstanding the verdict] challenges the legal sufficiency of the evidence presented . . . ." *See Potts v. State*, 233 So. 3d 782, 786-87, 790 (¶¶15, 31, 35) (Miss. 2017) (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)). Sufficiency of the evidence claims are reviewed de novo. *Turner v. State*, 291 So. 3d 376, 383 (¶20) (Miss. Ct. App. 2020). When reviewing the legal sufficiency of a conviction, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrett v. State*, 344 So. 3d 849, 851 (¶12) (Miss. 2022) (internal quotation mark omitted). "We view all of the evidence in the light most favorable to the prosecution . . . and give the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence." *Id*. "We will reverse and render if the facts and inferences favor the defendant with such force that reasonable jurors could not find him guilty beyond a reasonable doubt." *Melendez v. State*, 354 So. 3d 944,

6

952 (¶30) (Miss. Ct. App. 2023) (quoting *Smoots v. State*, 310 So. 3d 1184, 1189 (¶17) (Miss. Ct. App. 2020)). "However, we must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

¶13. Craft argues that the trial court erred in denying his motion for a judgment notwithstanding the verdict because "the State failed to prove, beyond a reasonable doubt, that Craft committed first degree murder." However, Craft was ultimately convicted of second-degree murder under Mississippi Code Annotated section 97-3-19(1)(b) (Supp. 2017). This section provides in pertinent part:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
> > (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder[.]

"The foundational element for the crime of murder, regardless of degree, is that the killing of a human being occurred." *McCool v. State*, 328 So. 3d 173, 183 (¶35) (Miss. Ct. App. 2021). There is no dispute that Craft shot and killed Spivey. The relevant question is whether the State presented sufficient evidence that Craft shot Spivey while engaged in "an act eminently dangerous to others and evincing a depraved heart," as required for second-degree murder. *See* Miss. Code Ann. § 97-3-19(1)(b) (defining second-degree murder); *Id*. § 97-3-15(1)(f) (Supp. 2016) (providing justification of self-defense). Our Supreme Court has described second-degree murder as "a reckless and eminently dangerous act directed toward a single individual." *Swanagan v. State*, 229 So. 3d 698, 704 (¶24)

7

(Miss. 2017).

¶14.   Here, there was sufficient evidence presented at trial to prove that Craft was guilty of second-degree murder.  Craft shot and killed Spivey while he was unarmed and simply running to aid his mother, who was being assaulted.  Roosevelt, Jo Ann, and Craft all testified that Spivey did not have a weapon on him during the incident.  Craft was fully aware that Spivey was unarmed.  Nevertheless, Craft pulled the trigger and shot Spivey in his chest. After realizing he shot his nephew, he did not try to help him into the car or call for help.  Jo Ann testified that after Craft shot Spivey, he remained "standing there with the gun still pointed" as they were driving off to rush Spivey to the hospital.  Additionally, Craft never revealed to the police that he felt scared or that he was being attacked by Spivey.  He allowed Roosevelt to give an account of the incident.  When the police asked who shot Spivey, he said, "I shot him," and gave no further context.  If Craft felt like he had been attacked and truly feared for his life, he likely would have revealed that information to the police when he admitted to having shot Spivey.

¶15.   In his brief, Craft emphasizes that he "did not intend to shoot the gun" and "he definitely did not intend to murder [Spivey]."  However, our Supreme Court has held that "[a] finding of malice is not required for depraved-heart murder." *Swanagan*, 229 So. 3d at 704 (¶24).  "Malicious intent 'can be inferred from the circumstances if the actions involved a very high degree of carelessness evincing a reckless indifference to the danger to human life.'" *Hawkins v. State*, 101 So. 3d 638, 642 (¶12) (Miss. 2012) (quoting *Clark v. State*, 693 So. 2d 927, 930 (Miss. 1997)).  All that was required was a showing that Craft committed

"a reckless and eminently dangerous act" toward Spivey. *Swanagan*, 229 So. 3d at 704 (¶24). It was reasonable for the jury to conclude that Craft acted recklessly and dangerously because the circumstances did not warrant his use of deadly force. Craft provoked the incident by kneeling next to Roosevelt, who was on top of Jo Ann with his knee in her back. Craft was aware that Spivey was running to help his mother. He was also aware that Spivey was unarmed. As Spivey was running, Craft fatally shot Spivey in the chest before he could reach his mother.

¶16. Accepting all the evidence in a light most favorable to the State, we find that a rational juror could have found that the State proved beyond a reasonable doubt that Craft was guilty of second-degree murder. Accordingly, sufficient evidence supports the conviction of second-degree murder.

## II. Weight of the Evidence

¶17. Craft next argues that the verdict was against the overwhelming weight of the evidence. He claims that the evidence was in his favor because he was acting in lawful and necessary self-defense. "When considering challenges to the weight of the evidence, 'we review the evidence in the light most favorable to the verdict and review the trial court's denial of a motion for a new trial under an abuse-of-discretion standard.'" *Pace v. State*, 369 So. 3d 588, 597 (¶33) (Miss. Ct. App. 2023) (quoting *Wayne v. State*, 337 So. 3d 704, 715 (¶39) (Miss. Ct. App. 2022)). "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*.

¶18. There was conflicting evidence surrounding what exactly occurred before Craft shot and killed Spivey. Craft wanted the jury to believe that Spivey was charging solely toward him, despite seeing Roosevelt on top of his mother with his knee in her back. Craft claimed that he told Spivey to stop several times before firing a bullet into Spivey's chest. However, Jo Ann claimed that Spivey saw her on the ground with Roosevelt on top her and Craft kneeling beside him, so he was running to help her. Both Jo Ann and Roosevelt testified that he screamed, "Get off my momma." Craft testified that Spivey was coming at him aggressively as if he was going to attack him, so he pulled the gun out to deter him. However, Jo Ann testified that Craft stood up and pulled out the gun when he saw Spivey running in the distance and shot him when he was five feet away from her. The jury could have determined that Craft provoked the incident by standing over Jo Ann while she was being assaulted by Roosevelt.

¶19. "It is well established that the jury determines matters of weight, credibility, and conflicting evidence." *Beasley v. State*, 362 So. 3d 112, 126 (¶50) (Miss. Ct. App. 2023) (citing *McCool*, 328 So. 3d at 184-85 (¶47)). "[W]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). It was ultimately up to the jury to either believe Craft's account of the incident or the evidence and witnesses presented by the State. They resolved the factual disputes in favor of the State. We cannot say that the jury's verdict was so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

Accordingly, the trial court did not abuse its discretion by denying Craft's motion for a new trial.

### III. Jury Instructions

¶20. Craft also contends that the court erred by giving jury instruction numbers S-4, S-5, S-6, S-7, S-10, and S-11. In this case, "[t]he standard of review with regard to a trial court's decision to grant or deny a jury instruction is abuse of discretion." *See Lewis v. State*, 374 So. 3d 529, 542 (¶40) (Miss. Ct. App. 2023) (quoting *Thompson v. State*, 338 So. 3d 730, 738 (¶42) (Miss. Ct. App. 2022)). "In its analysis, an appellate court considers all given jury instructions to determine whether, when read as a whole, they fairly announce the law of the case and create no injustice[.]" *Id*. "If the instructions fairly state the law and do not prejudice the defendant, reversal is not warranted." *Id*. (internal quotation marks omitted). "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. Craft argues the court should not have given instructions "regarding any lesser offenses to first-degree murder."

¶21. Jury Instruction No. S-4 provided:

> If you find that the State has failed to prove any one or more of the essential elements of the crime of first-degree murder, you must find the defendant not guilty of first-degree murder. You will then proceed with your deliberations to decide whether the State has proven beyond a reasonable doubt all the elements of the lesser crime of second degree. If you find from all the evidence in this case beyond a reasonable doubt that: 1. On or about July 8th, 2018, in Smith County, Mississippi; 2. Although DOUGLAS CRAFT, did not have a deliberate design to effect the death of Austin T. Spivey, 3. DOUGLAS CRAFT, unlawfully, without the authority of law, and while in the commission of an act eminently dangerous to others and evincing a depraved heart killed Austin T. Spivey, a human being, by shooting him, and 4. DOUGLAS CRAFT, was not acting in self-defense then you shall find DOUGLAS

11

CRAFT guilty of second-degree murder. If the State did not prove any one of the listed elements beyond a reasonable doubt, then you shall find DOUGLAS CRAFT, not guilty of second-degree murder.

Jury Instruction No. S-5 provided:

The Court instructs the jury that "depraved heart" as it is used in these instructions, means a person acts in a highly dangerous way which shows that he does not care for the safety of human life. Even if someone does not intend to kill a particular person, he can still be guilty of murder if he acts with a depraved heart, and a person is killed as a result.

Jury Instruction No. S-6 provided:

If you find that the State did not prove any one of the elements of second-degree murder, then you must find the defendant, DOUGLAS CRAFT, not guilty of second-degree murder. You will then proceed with your deliberations to decide whether the State has proven beyond a reasonable doubt all the elements of the lesser crime of manslaughter, heat of passion. If you find beyond a reasonable doubt from the evidence in this case that: 1. On or about July 8th, 2018, in Smith County, Mississippi; 2. DOUGLAS CRAFT, unlawfully, without the authority of law, and without deliberate design killed Austin T. Spivey, a human being, in the heat of passion by using a deadly weapon to shoot Austin T. Spivey; and 3. DOUGLAS CRAFT, was not acting in self-defense then you shall find DOUGLAS CRAFT guilty of manslaughter, heat of passion. If the State did not prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of manslaughter, heat of passion.

Jury Instruction No. S-7 provided:

The Court instructs the jury that "heat of passion" as it is used in these instructions, means a person acts in a state of violent and uncontrollable rage. Then person must have been provoked into acting in such a manner by some acts(s) or word(s) which would reasonably lead to an angry, hateful, resentful, or terrified emotional state of mind.

Jury Instruction No. S-10 provided:

If you find the defendant guilty of second-degree murder, the form of the verdict shall be as follows: "We, the jury, find the defendant guilty of second-degree murder." You are further instructed that if you find the defendant not

12

guilty of second-degree murder, the form of your verdict shall be as follows: "We, the jury, find the defendant not guilty of second-degree murder." You shall write your verdict on a separate sheet of paper. It does not need to be signed.

Jury Instruction No. S-11 provided:

If you find the defendant guilty of manslaughter, heat of passion, the form of the verdict shall be as follows: "We, the jury, find the defendant guilty of manslaughter, heat of passion." You are further instructed that if you find defendant not guilty of manslaughter, the form of the verdict shall be as follows: "We, the jury, find the defendant not guilty of manslaughter, heat of passion." You shall write your verdict on a separate sheet of paper. It does not need to be signed.

Craft contends that since he had already been indicted for first-degree murder and no lesser offense, the court should not have given these instructions because they allowed the State "three bites at the apple" to convict Craft. Craft provides no legal basis to support this assertion. Our Supreme Court has held that "such failure to cite relevant authority 'obviates the appellate court's obligation to review such issues.'" *Thorson v. State*, 895 So. 2d 85, 110 (¶55) (Miss. 2004) (quoting *Simmons v. State*, 805 So. 2d 452, 487 (¶90) (Miss. 2001)). Thus, this issue is procedurally barred from our review. *Accord* M.R.A.P. 28(a)(7).

¶22. Notwithstanding the procedural bar, this issue is still without merit. Our Supreme Court articulated a standard in determining whether to give a lesser-included-offense instruction in *Harveston v. State*, 493 So. 2d 365 (Miss. 1986):

Our law . . . allows the prosecution to request and obtain lesser-included offense instructions, as it does the defense. The test for whether such an instruction should be granted is the same: is it warranted by the evidence? Where the answer is affirmative, the defendant has no right to complain of the circuit court's submission to the jury of a properly phrased lesser-included offense instruction, either at the request of the prosecution or on its own motion.

13

*Id.* at 375 (¶25).  As discussed above, the evidence supported the second-degree (depraved-heart) murder instructions and conviction.  Turning to the "heat of passion" manslaughter instructions, we find that it is not necessary to discuss whether this instruction was properly given because he was ultimately convicted of second-degree murder, not manslaughter.  "Therefore, the issue of whether the jury was improperly instructed on manslaughter is moot."  *Cowart v. State*, 178 So. 3d 651, 665 (¶36) (Miss. 2015) (citing *Mayfield v. State*, 612 So. 2d 1120, 1128 (Miss. 1992)).

## IV.    Ineffective Assistance of Counsel

¶23.    Craft's final argument is three-fold.  He contends that he was prejudiced because his counsel "failed to (a) bolster the fact that marijuana use increases violent behavior, (b) present a 'stand your ground/castle doctrine' defense and a corresponding jury instruction, and (c) attempt to strike certain jurors based on partiality."

¶24.    "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings."  *Moffett v. State*, 354 So. 3d 929, 936 (¶13) (Miss. Ct. App. 2022) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020)).  "Such claims will be addressed on direct appeal when '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed.'"  *Id.*  "Additionally, such claims may be resolved 'on direct appeal when the record affirmatively shows that the claims are without merit.'"  *Id.*  "If we do not reverse on other grounds and are unable to conclude that the defendant received

14

ineffective assistance of counsel, we will affirm 'without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.'" *Id.* (quoting *Boudreaux v. State*, 189 So. 3d 1274, 1280 (¶20) (Miss. Ct. App. 2016)).

¶25.    To successfully demonstrate an ineffective assistance claim, Craft must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A strong but rebuttable presumption exists that counsel's performance was effective." *Beal v. State*, 225 So. 3d 1276, 1282 (¶17) (Miss. Ct. App. 2016) (citing *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999)). "To overcome this presumption, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*

¶26.    Our Supreme Court has "reiterate[d] that, generally, ineffective-assistance-of-counsel claims are more appropriately brought during post[-]conviction proceedings." *Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015)). In *Dartez*, the Court explained:

> [A]n appellate court is limited to the trial-court record in its review of the claim(s), and there may be instances in which insufficient evidence and/or information exists within the record to address the claim adequately. In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post[-]conviction relief (PCR).

*Dartez*, 177 So. 3d at 423 (¶10). After reviewing the record, we find that there is no

15

affirmative showing of ineffective assistance of counsel that will enable us to make an informed decision on his counsel's performance. Accordingly, we decline to address his challenges on direct appeal; however, we preserve his right to raise these issues in a properly filed motion for post-conviction collateral relief.

## CONCLUSION

¶27. We find that all Craft's challenges to his conviction lack merit. There was sufficient evidence for a rational jury to conclude that Craft was guilty of second-degree murder beyond a reasonable doubt. Also, the overwhelming weight of the evidence was not contrary to the jury's verdict. Additionally, the trial court did not abuse its discretion in giving the jury instructions at issue. And finally, Craft's challenges to his counsel's performance would be more appropriately addressed in post-conviction collateral proceedings. Thus, we affirm the trial court's judgment of conviction and sentencing.

¶28. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., McDONALD, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., NOT PARTICIPATING.**