# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00289-SCT

*VICTORIA SWANAGAN a/k/a VICTORIA P. SWANAGAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | DAVID LINZEY |
| | IVON JOHNSON |
| | DAMON STEVENSON |
| | DEXTER WOODBERRY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KITCHENS AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Victoria P. Swanagan was convicted by a jury of the depraved-heart murder of Vincent Hill and was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended, fifteen years to serve, and

five years of supervised probation.[1] Finding no error, we affirm the sentence and conviction of Swanagan.

### STATEMENT OF THE FACTS AND PROCEEDINGS BELOW

¶2.     At trial, Derrick Sims testified that he and Vincent P. Hill worked together. When Sims arrived at Swanagan's home to pick up Hill for work, he heard Swanagan and Hill arguing in her house. Swanagan exited her house and went next door to her mother's house. During that time, Hill stayed inside Swanagan's house. When Swanagan returned, Sims heard a "ruckus." After a while, Hill came rushing out of the house without a shirt. "About the time he made it halfway down the stairs she hit him in the back of the – Victoria hit him in the back of the head."

> When they come outside, when she hit him in the back of the head, he leaned against her car, and he said, don't hit me no more. And he told her mama, I love your daughter to death, but look how she treat me. That was his exact words. He didn't cuss at her. He didn't call her nothing out of her name. That's exactly what he said. And after that she said a little something, and he came and got in my truck. He was, like, man, let's go. He said, I'm tired. That was his exact words.

Swanagan opened the passenger door and got in the truck. Hill told Sims to drive to work. Sims also testified that no one forced Swanagan to get in his truck.

¶3.     Swanagan and Hill continued arguing in the truck. The arguing escalated, and Swanagan hit Hill. Sims testified that Hill could not strike Swanagan, "[b]ecause he was so tall in the truck it's like how she was over him he couldn't move." Then Swanagan bit Hill.

---

[1] Swanagan was indicted for "willfully, unlawfully, and feloniously kill[ing] Vincent P. Hill . . .  with deliberate design . . . by shooting . . .  Hill in the chest . . . in violation of Section 97-3-19(1)(a). . . ."

Hill started yelling and screaming, causing Sims to stop the truck. Sims got out of the truck and opened the passenger door. Swanagan and Hill fell out at the same time. As they were falling to the ground, Hill hit Swanagan on top of her head. Sims testified that Hill hit Swanagan only that one time, before he jumped up and ran to the truck, yelling at Sims to "come on."

¶4.     Sims was behind the truck, headed toward the driver's side door, when he heard the first gun shot and saw Swanagan with a gun, shooting at the truck. Swanagan was on the ground and had her hand securely on a pistol, pointing up at the truck. As Hill started to drive off, Sims heard two more shots. After Swanagan had put the gun down, she told Sims she would buy him a new window.

¶5.     Sims heard his truck stop running, and he ran off toward it. Sims found the truck in some woods nearby. Sims found Hill "in the center of the dashboard dead." Sims then jumped in the truck and drove to Swanagan's residence. "I jumped out of the truck immediately, and I couldn't say nothing but you killed him. . . . I just got in the truck and left the scene." Sims then drove to a service station because he wanted to be safe.

¶6.     Sims testified that he neither owned a gun nor had a gun in his possession the day Hill was killed. He said Hill knew that Sims no longer owned a gun. Even when Sims did own a gun, he carried it in his truck only when he went fishing, but never to work. Sims testified that Swanagan had been fishing with Sims and Hill, but she also knew he had gotten rid of his gun.

¶7.     Felicia Robinson, a forensic scientist with the Mississippi Forensic Laboratory, was accepted as an expert in the field of forensic analysis of firearms and tool marks. Robinson testified that the projectile submitted to the crime lab from Hill was fired from the firearm retrieved from Swanagan's property.

¶8.     Lisa Funte, a state forensic pathologist, was accepted as an expert in the field of forensic pathology. Funte testified that she performed the autopsy on Hill. During the autopsy, Funte noted abrasions and contusions on his face, neck, hands, and legs. Funte also found

> an entrance defect on the right side of the chest and an exit defect on the left side of the chest. In alignment with that exit defect that was on the left side of the chest there was also defects in the left arm. The bullet went from the right side of the chest through the chest, exiting on the left side and reentered the left arm where the bullet was recovered.

¶9.     After the State rested and motions were denied, Swanagan offered her defense. Barbara Swanagan, mother of Victoria Swanagan, testified that on the morning Hill was killed, her daughter came over to her home twice. She heard noise in her daughter's home each time Swanagan returned home. Barbara went outside and called for her daughter. Both Swanagan and Hill exited the house. Barbara tried to defuse the situation by talking calmly to both Hill and Swanagan, but Hill cursed at Barbara.

¶10.    After thinking she had calmed everyone down, Barbara turned to go back in her house. As she turned, she heard the truck start. She saw the truck start and stop several times and was worried that something was not right. She asked her daughter-in-law to call 911, and while Barbara was talking to the 911 operator, she heard gunshots. Barbara saw her daughter

4

walking toward them with a gun in her hand. Barbara was neither in her daughter's house when Swanagan and Hill were fighting, nor did she see her daughter shoot Hill.

¶11.    Swanagan testified that, on the morning Hill was shot, she asked him about text messages she had received from his family, and he "blew up" at her. Hill accused her of cheating on him and then made sexual advances towards her. When she refused, he began to shove, hit, and call her names. She said this continued for more than ten minutes.

¶12.    When Hill refused to leave, Swanagan walked to her mother's house to get ready for work but then returned after she heard noises coming from her house. She returned and found that Hill had turned over stands, knocked things off of furniture, and punched holes in her walls. Swanagan tried to gather her things for work. Hill refused to leave and continued to knock things over. He then ripped off his shirt.

¶13.    Swanagan grabbed her purse and went back to her mother's house. She heard noises again, went home, and found that Hill was still tearing her house apart. They began to argue again, and at some point, her tooth was knocked out.[2] Swanagan admitted to hitting and scratching Hill while they were fighting inside her home.

¶14.    Swanagan then heard her mother calling for her. She and Hill went outside. Hill got in Sims's truck, while pulling her into the truck. As she was trying to figure out how to get out of the truck since the passenger-side door had no handle, Hill hit her from behind. Hill told Sims to "crank the truck. Let's go. We're gonna drop this bitch off on the side of the

---

[2] Swanagan expressed to Investigator Charlotte Dixon that "her tooth was loosened during [a physical altercation with Hill], possibly knocked out because her mouth was hurting." Dixon testified that Swanagan was missing a tooth and exhibited other physical injuries, but Dixon did not notice any blood in or on Swanagan's mouth.

5

interstate." Hill began twisting Swanagan's arms, pinning her, and then tried to bite her, but she was able to bite him first. When she bit him, he yelled, and Sims stopped the truck. Sims then opened the passenger-side door from outside the truck. Hill shoved Swanagan out of the truck. While she was on the ground, Hill continuously kicked her. Swanagan tried to protect herself from his blows. While Hill was kicking her, his gun fell out. Swanagan rolled on top of the gun when Hill tried to retrieve it.

¶15. After he was unable to get the gun, Hill began to back up, nearing the truck. As Hill got close to the truck, he reached behind him, trying to get something out of the truck. Swanagan feared that Hill was trying to find Sims's gun that he kept in his truck. Swanagan was "scared for her life" and told Hill to leave. He did not leave, but instead continued "fidgeting" in the truck. Swanagan then fired the gun, hoping Hill would leave. Hill then called Swanagan a "dumb bitch." She recalled screaming for Hill to leave and the gun going off two or three more times. At some point Hill got back in the truck and drove away, but Swanagan could not recall when she fired the other shots. When she saw that Hill was leaving, she began walking back to her house.

¶16. The jury found Swanagan guilty of depraved-heart murder. Swanagan was sentenced to a term of twenty-five years in the custody of the MDOC, with ten years suspended and five years to be served on supervised probation. Subsequently, Swanagan filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, arguing that "the State failed to prove [Swanagan] was not acting in self-defense at the time [Hill] was shot." Swanagan also argued that, if she was not acting in self-defense, at most the evidence

presented at trial established that she was acting in the heat of passion, which "would mitigate the murder to manslaughter." The trial court denied her motions after determining the jury was properly instructed and had heard the facts, before finding Swanagan guilty of depraved-heart murder.

## STATEMENT OF THE ISSUES

¶17. Swanagan raises the following four issues on appeal:

**I. Whether the evidence was insufficient to support the verdict.**

**II. Whether the verdict was against the overwhelming weight of the evidence.**

**III. Whether the trial court erred in its supplemental instruction in response to the jury's question as to the definition of depraved heart.**

**IV. Whether Swanagan received ineffective assistance of counsel.**

## ANALYSIS

**I. Whether the evidence was insufficient to support the verdict.**

¶18. When considering a sufficiency-of-the-evidence argument, this Court has said that:

> the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Fagan v. State*, 171 So. 3d 496, 503 (Miss. 2015) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005)) (internal alterations and quotation marks omitted). This Court may reverse only "'where, with respect to one or more of the elements of the offense charged, the

7

evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.'" *Franklin v. State*, 676 So. 2d 287, 288 (Miss.1996) (quoting *Wetz v. State*, 503 So. 2d 803, 808 (Miss.1987)).

¶19.    Swanagan argues that the evidence failed to establish beyond a reasonable doubt that she (1) did not act in necessary self-defense and (2) acted with malice and not in the heat of passion.

### A. Self-Defense

¶20.    Swanagan argues that because she raised self-defense, the State had the burden of proving beyond a reasonable doubt that she did *not* kill Hill in self-defense. Swanagan claims that the State failed to meet its burden of proving beyond a reasonable doubt that she did not act in self-defense when she killed Hill. The State responds that it submitted sufficient evidence such that a reasonable jury could have found beyond a reasonable doubt that Swanagan killed Hill with a depraved heart and not in necessary self-defense.

¶21.    Mississippi's justifiable homicide statute states that:

> the killing of a human being . . . shall be justifiable . . . [w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend  a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.

Miss. Code Ann. § 97-3-15(1)(f) (Rev. 2014). Evidence was presented that Hill was unarmed at the time Swanagan shot and killed him. When police arrived at Swanagan's residence, they were instructed that a gun had been placed in a bucket by Barbara, after she had retrieved the gun where Swanagan had laid it on a car. That was the only weapon recovered  –  the gun

Swanagan used to shoot Hill. Sims testified that Swanagan shot at Hill at least three times. Sims also testified that Hill was trying to *get in the truck and drive away* when Swanagan shot him. Furthermore, Swanagan *admitted* that she had shot at Hill at least three times. She could not recall if Hill was still in front of her or if he had gotten in the truck and was driving away when she fired the last two shots. The autopsy showed that Hill died from a bullet wound to his chest. Experts determined that the fatal shot came from the gun recovered at Swanagan's home.

¶22.    "The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury." ***Wade v. State***, 748 So. 2d 771, 774 (Miss. 1999). In this case, conflicting testimony was adduced regarding the events immediately surrounding the shooting. The jury was instructed on murder, depraved-heart murder, deliberate-design murder, heat-of-passion manslaughter, and justifiable self-defense. The jury weighed the evidence, considered its options under the law, and ruled in favor of the State. We cannot say that the evidence presented was insufficient for a rational jury to find beyond a reasonable doubt that Swanagan shot Hill with a depraved heart to kill him and not in necessary self-defense. The opposing theories of the prosecution and the defense were fully and fairly presented to a properly instructed trier of fact. In the end, the disputed issues of fact were resolved in favor of the State and against the defendant. This claim is without merit.

    ***B. Heat-of-Passion***

9

¶23.    Swanagan alternatively argues that the State failed to prove beyond a reasonable doubt that she acted with the malice required for a depraved-heart murder conviction. She insists the proof demonstrates that she acted in the heat of passion, and the murder conviction should be reduced to a manslaughter conviction. The State counters that Swanagan's actions were performed with malice and that her actions exceeded the level of mental culpability required for heat-of-passion murder. Both arguments are misguided as to a requirement of malice for a conviction for depraved-heart murder. While Swanagan is correct that the State failed to prove she acted with malice, the jury did not convict her of a crime which required malice. The word malice is not found in Section 97-3-19(1)(b) of the Mississippi Code, which specifically reads that depraved-heart murder is "without any premeditated design. . . ." Miss. Code Ann. § 97-3-19 (1)(b) (Rev. 2014). Only subsection (1)(a) in Section 97-3-19, i.e., murder, requires a finding of malice.[3] Although Swanagan was indicted for and the jury was instructed on murder, the jury did not find Swanagan guilty of murder.

¶24.    Swanagan was found guilty of depraved-heart murder, now "second-degree murder," which is a killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although *without any premeditated design* to effect the death of any particular individual. . . ." Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014) (emphasis added). Depraved-heart murder encompasses "a reckless and eminently dangerous act directed toward a single individual." ***Windham v. State***, 602 So. 2d

---

[3] "Malice, or deliberate design, may be inferred from the use of a deadly weapon." ***Holliman v. State***, 178 So. 3d 689, 698 (Miss. 2015), *reh'g denied* (Dec. 3, 2015).

798, 802 (Miss.1992). A finding of malice is not required for depraved-heart murder. *See* Miss. Code Ann. § 97-3-19(1)(b).

¶25. Evidence was presented that Swanagan fired at least three shots directly at Hill, and that she did not stop firing until he fled. The first shot shattered the passenger window, followed by two more shots. Given the evidence presented and comparing her actions with the statutorily required elements for depraved-heart murder, the jury had more than sufficient evidence to find that Swanagan was guilty of depraved-heart murder, not manslaughter. This issue is devoid of merit.

**II.     Whether the verdict was against the overwhelming weight of the evidence.**

¶26.    In ***Bush***, 895 So. 2d at 844, this Court set out the standard of review for weight of the evidence, stating:

> [w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial:
>
> > the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000). . . . [T]he evidence should be weighed in the light most favorable to the verdict. ***Herring***, 691 So. 2d at 957.

***Bush***, 895 So. 2d at 844.

11

¶27. Swanagan argues that this Court should nullify the jury's verdict because the overwhelming weight of evidence in this case "creates serious doubt as to her guilt for murder and asks this Court to remand her case for a new trial to permit another jury to consider whether she is guilty of murder or only manslaughter. We decline her invitation.

¶28. "Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Ambrose v. State*, 133 So. 3d 786, 793 (Miss. 2013) (quoting *Brown v. State*, 995 So. 2d 698, 702 (Miss. 2008)). Viewing the evidence in the light most favorable to the State, and granting the State the benefit of all inferences that may be drawn from the evidence, we find that the conviction for depraved-heart murder was not against the overwhelming weight of the evidence. This issue is devoid of merit.

**III. Whether the trial court erred in its supplemental instruction in response to the jury's question as to the definition of depraved heart**.

¶29. This Court has held that:

> [w]hen reviewing a trial court's response to the jury's inquiry, this Court's inquiry is not whether the trial court was "right or wrong" in its response, but whether the trial court abused its discretion. Unless the trial court based his decision on an erroneous view of the law, this Court is not authorized to reverse for an abuse of discretion absent a finding the trial court's decision was "arbitrary and clearly erroneous."

*Galloway v. State*, 122 So. 3d 614, 634 (Miss. 2013) (citing *Hooten v. State*, 492 So. 2d 948, 950 (Miss. 1986)). Furthermore, Rule 3.10 of the Uniform Rules of Circuit and County Court Practice states:

> If the jury, after they retire for deliberation, desires to be informed of any point of law, the court shall instruct the jury to reduce its questions to writing and

the court in its discretion, after affording the parties an opportunity to state their objections or assent, may then grant additional written instructions in response to the jury's request.

URCCC 10.

¶30.   During the deliberations, the jury sent out a note asking for a definition of depraved heart.

| | |
|---|---|
| BY THE COURT: | The jury having sent a note out, and prosecution as well as defense being advised of the question, the question being a definition of depraved heart. The Court's response was: By agreement with the prosecution and defense read S-2 for guidance. Is that correct? |
| BY MR. STEVENSON: | Correct. |
| BY MR. JOHNSON: | That's correct, Your Honor. |

Jury Instruction S-2 reads as follows:

The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that:

1. The defendant Victoria P. Swanagan,

2. Did on or about July 3, 2014,

3. In the Second Judicial District of Hinds County, Mississippi,

4. Kill Vincent Hill, a human being,

5. While engaged in the commission of an act eminently dangerous to others and evincing a depraved heart, disregarding the value of human life, although without any premeditated design to effect the death of Vincent Hill,

Then you shall find Victoria P. Swanagan guilty of Depraved Heart Murder.

If the prosecution has failed to prove any one or more of the above listed elements of Depraved Heart Murder, then you shall proceed in your deliberations to consider the lesser offense of Manslaughter.

¶31.    Swanagan argues that the trial court erroneously responded to the jury's question by singling out Instruction S-2, giving it undue prominence in the jury's eyes. Swanagan contends that the trial court's response unduly prejudiced her trial because Instruction S-2 did not include a reference to self-defense. Swanagan alleges this may have misled the jury to believe that self-defense, or its absence, was not an applicable element to the crime of depraved-heart murder. Swanagan further argues that the trial court should have instructed the jury to reread all of the jury instructions and "perhaps given another depraved heart murder instruction that covered the omission in instruction S-2 by including not in necessary self-defense."

¶32.    Both of these arguments are procedurally barred because Swanagan did not object to the trial court's response, nor did she object to Instruction S-2. As the State argues, "when a party fails to make a contemporaneous objection, the appellate court is under no obligation to review the assignment of error." *Hughes v. State*, 90 So. 3d 613, 623 (Miss. 2012) (citing *Caston v. State*, 823 So. 2d 473, 503 (Miss. 2002)). In this case, when the jury's note was submitted to the court, Swanagan did not object. Instead, the defense and prosecution agreed that the court should instruct the jury to see Jury Instruction S-2.

¶33.    Notwithstanding the procedural bar, these arguments are without merit. First, the trial court did not abuse its discretion in responding to the jury's inquiry. The instructions provided by the court demonstrated the proper rules of law and were not erroneous.

14

Additionally, the court's Instruction S-2 was not in error. "The instructions, together, fully and accurately informed the jury of state law, and the trial court did not err in directing the jury to review [S-2]." *Galloway*, 122 So. 3d at 635.

¶34. Second, Instruction S-2 was a proper statement of the law and does not require amendment, as argued by Swanagan. In *Harris v. State*, 861 So. 2d 1003 (Miss. 2003), this Court held that:

> [i]t was not error to give an instruction that omits the words "not in necessary self defense" when charging depraved heart murder when the Court also instructs the jury in a separate instruction that the killing would be justified if committed by the defendant in the lawful defense of his own person. The instructions, when read in their entirety, properly instructed the jury that a killing may not be murder, that the killing could be justified in self defense, the factors that must be considered when deciding if the killing was in self defense, and that the burden of proof is always on the State. Considering the instructions as a whole, this Court finds that the jury was properly instructed.

*Harris*, 861 So. 2d at 1015.

¶35. The jury received not one, but three separate instructions on self-defense. Instruction D-1 defined self-defense; D-2 instructed that the burden of proof was on the State to prove Swanagan did not act in self-defense; and D-3 informed the jury that Swanagan had a right to defend herself from any unjustified attack on her person and to use such force necessary to repel her attacker.

¶36. We find that the jury was instructed properly on self-defense and rejected her claim of self-defense. This issue is devoid of merit.

**IV.     Whether Swanagan received ineffective assistance of counsel.**

15

¶37. If an ineffectiveness claim on direct appeal is based on facts fully apparent in the record before us, the Court will address the ineffective-assistance-of-counsel claim. M.R.A.P. 22(b). *See Parker v. State*, 30 So. 3d 1222, 1232 (Miss. 2010). The facts and issues upon which Swanagan relies are succinctly stated in the fully developed record, and the controlling law is the same as we previously have cited, *supra* ¶¶ 21-40.

¶38. The substantive standard of review for an ineffective-assistance claim is twofold: "In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Holly v. State*, 716 So. 2d 979, 989 (Miss.1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985); *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)). Swanagan bears "the burden of proving that counsel's performance was deficient and prejudicial." *Branch v. State*, 882 So. 2d 36, 52 (Miss. 2004) (citing *Hansen v. State*, 649 So. 2d 1256, 1258 (Miss. 1994)).

¶39. Swanagan's appellate counsel[4] now argues her trial attorney was ineffective for "(1) failing to request instructions on culpable negligence manslaughter and accident or misfortune and (2) agreeing to the trial court's response to the jury's question." Addressing the latter, we have held *supra* that the trial court did not err in its response to the jury. Accordingly, that assignment of error cannot support a claim of ineffective assistance of counsel. As to the instructions to which Swanagan claims she was entitled, no evidence was

---

[4] Swanagan has different appellate counsel than her trial counsel.

16

presented in this record to support an instruction or even support an inference of culpable-negligence manslaughter, accident, or misfortune.

¶40.    "When claiming ineffective assistance of trial counsel because of jury instructions, '[i]t is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense.'" *Havard v. State*, 928 So. 2d 771, 789 (Miss. 2006) (quoting *Burnside v. State*, 882 So. 2d 212, 216 (Miss. 2004)). "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory. . . ." *Thomas v. State*, 48 So. 3d 460, 469 (Miss. 2010) (citations omitted). "In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction." *Giles v. State*, 650 So. 2d 846, 849 (Miss. 1995). The trial court instructed this jury on Swanagan's theories of defense, which had an evidentiary basis.

¶41.    Culpable-negligence instructions are most commonly found in DUI and other automobile cases, which address negligent or grossly negligent conduct.  The State never claimed any gross or willful acts of negligence, and Swanagan never defended under a theory of negligence. In non-auto cases, we have held that comparable evidence found in today's case does not support an instruction for culpable negligence:  *Chandler v. State*, 946 So. 2d 355, 361-62 (Miss. 2006) (evidence did not support a culpable-negligence instruction where the defendant admitted to pulling out a gun and shooting the victim); *Fairley v. State*, 871 So. 2d 1282, 1285 (Miss. 2003) (culpable-negligence manslaughter instruction denied where

evidence showed that defendant argued, pointed a gun at the victim and shot her, and then pushed her onto the road, where she was hit by a passing vehicle); *Sanders v. State*, 781 So. 2d 114, 119 (Miss. 2001) (culpable-negligence manslaughter instruction denied where evidence showed that defendant intentionally hit victim on the head with a hammer); *Clark v. State*, 693 So. 2d 927, 932 (Miss. 1997) (culpable-negligence manslaughter instruction denied where evidence showed that defendant intentionally went to his truck to get his shotgun, then entered the building, shot the door and loaded and fired three more shots through the door); *Hurns v. State*, 616 So. 2d 313, 315 (Miss. 1993) (culpable-negligence manslaughter instruction denied where evidence showed that defendant hit victim with multiple blows to the head with blunt object over short period of time).

¶42.    As held *supra*, evidence was presented, and Swanagan admitted, that she fired at least three shots directly at Hill. We find no error by Swanagan's trial counsel in failing to request an instruction on culpable negligence or on accident or misfortune, for the facts presented in the record before us do not support any of these instructions. This claim is devoid of merit.

## CONCLUSION

¶43.    For the reasons stated above, we affirm Swanagan's conviction and sentence.

¶44.    **CONVICTION OF DEPRAVED-HEART MURDER AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED AND FIFTEEN (15) YEARS TO SERVE, FOLLOWED BY FIVE (5) YEARS OF SUPERVISED PROBATION, AFFIRMED.  APPELLANT SHALL BE GIVEN CREDIT FOR TIME SERVED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND  CHAMBERLIN, JJ., CONCUR.**