# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00728-COA

**KADARRON FOREMAN A/K/A KHADARRON FOREMAN A/K/A KADARRON D. FOREMAN A/K/A KADARRON DENARIO FOREMAN**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2024 |
| TRIAL JUDGE: | HON. ALAN D. LANCASTER |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: INDIA MARIAH SPRINKLE |
| DISTRICT ATTORNEY: | WILLIAM ADAM HOPPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/19/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     On Christmas Day, December 25, 2022, Kadarron Foreman shot and killed Sammie Bryant (Sammie) in the front yard of Sammie's mother's home. After a trial, a jury found Foreman guilty of manslaughter, and he was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections. Foreman appealed, challenging the sufficiency and weight of the evidence supporting his conviction. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 18, 2023, Kadarron Foreman was indicted by a grand jury for one count of

first-degree murder pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2020). A three-day jury trial was held from May 28-30, 2024.

¶3. The State first called Anthony Williams, who was an eyewitness. Williams testified that he and his girlfriend, LaTasha Duren, went to Betty Bryant's house on Christmas evening, December 25, 2022. LaTasha is Betty's niece and Sammie's first cousin. Williams was shown a picture of Betty's house and asked to mark where the cars were parked and people were standing on Christmas day. Betty's house had a gravel driveway with a parking area to the side of the driveway. LaTasha was parked in the gravel parking area closest to the house, and Foreman's car was parked next to LaTasha in the middle of the parking area.

¶4. When Williams and LaTasha arrived, Foreman and other family members were already at the house. This was the first time Williams had ever met Foreman. Everyone was "sitting down having dinner," and Williams was "sitting on the couch." "Shortly after [they] had dinner[,]" Sammie arrived at the house. Foreman was already outside when Sammie drove up, and LaTasha, Betty, and Betty's sister Martha Duren "all went outside" because they heard arguing. Williams knew that Foreman and Sammie did not get along, so Williams "went outside after the argument had gone on a little bit longer." He testified that he "knew it was all women outside with two other men out there. So [he] went out to de-escalate" the situation. Williams thought Sammie would listen to him, believing a "man is more likely to listen to a man sometimes[.]"

¶5. Outside, "[e]verybody was yelling[,]" and Martha, Betty, and LaTasha were asking

Foreman to leave. Williams heard Sammie saying, "Get momma inside."[1] Williams stated that Sammie had parked his car farther up the driveway, very near the house, but he was standing farther down the driveway in the parking area. Williams walked toward Sammie and noticed Foreman going toward Foreman's car. Williams assumed Foreman was leaving. Williams had to walk around the back side of LaTasha's car to reach the place where everyone was standing, which momentarily "obscured" his vision of Foreman and Sammie.

¶6.    When Williams made it around the car, Williams stated that he "saw Khadarron come out [of his car] with a gun, point the gun and shoot Sammie." Williams stated that Foreman "kind of walked" toward Sammie before shooting. Williams saw Sammie "kind of turn" before the shot, but Williams "couldn't see if he was grabbing for anything." Williams stated that he was behind Sammie, Martha was between Sammie and Foreman, and Betty was farther away. Williams "only heard one shot," and then he dropped to the ground.[2]

¶7.    Williams saw Sammie had fallen to the ground and called 911. Williams stated that he began administering CPR and first aid to Sammie. Williams saw Foreman walk back to his vehicle with his girlfriend, Vanessa Duren, and then they left. Williams was "trying to

_____

[1] There was some dispute at trial on cross-examination between Williams and defense counsel as to whether Williams later told the Carroll County sheriff that he heard Sammie say this. At trial, Williams could not remember what all he had heard Sammie say. A portion of Williams's interview with the sheriff was played for the jury.

[2] There was further dispute at trial with Williams's testimony as to whether he actually saw Foreman shoot Sammie. He testified to the jury that he saw Foreman shoot, but his recorded interview with the sheriff did not contain that statement. Williams's entire interview was played for the jury for impeachment purposes. Williams then clarified that he did not "know who it was that shot."

3

find out where [Sammie] was shot" and found a "bullet in the back of his head, like toward the back side of the head." Williams then noticed that Sammie had a gun that was upside down and next to his left hand.

¶8. Next, the State called Martha, who was Betty's sister and LaTasha's mother. Martha was at Betty's house on Christmas Day when Vanessa and Foreman arrived. She stated that Foreman had been at the house "maybe 20 minutes" visiting with Vanessa's mother, Hattie Mae, and then Foreman walked out the door. Martha was exiting Betty's restroom when she saw out the window that "Sammie had pulled up" to the house. She stated that she was trying "to get out the house just as fast as [she] could" because she knew Foreman and Sammie "didn't like each other."

¶9. When Martha walked outside, LaTasha and Betty were already outside, and according to Martha, Foreman and Sammie were "out there hooping and hollering and stuff[.]" Sammie had walked down the driveway from where he was parked. Martha "went straight to Sammie" and told him, "It ain't going to be no mess today. It's Christmas." She stated that she had her "hands up," and "had Sammie cornered off." She was "steady watching" Foreman and told him, "Get in the car. Get in the car, [Foreman]." She watched as Foreman went to his car, "opened that door up, and that is when he come out with that gun and shoot. Just like that. He did it so fast." She stated that she thought she heard two shots but was not certain that she heard the second one. She further stated that she saw Foreman shoot, and she could not say whether Sammie reached for anything; however, she "never saw Sammie with

4

a gun in his hand."

¶10.     Martha testified that she heard Vanessa say, "Boy – God dang, boy."  Martha heard Foreman react with, "He drawed on me first, Nessa.  He drawed on me first, Nessa.  He was standing there with that gun in his hand and shaking."  Martha then watched as Williams administered first aid to Sammie and Foreman left the house.  Similar to Williams's testimony, Martha stated that she never saw Sammie with a gun until after he was shot and fell to the ground.  She stated that "that gun must have fell out then because I sure didn't see him with no gun."  She also stated that Sammie did not go back to his car at any point during the argument with Foreman.

¶11.     LaTasha, Betty's niece and Martha's daughter, testified next.  She stated that it was usual for the family to gather at Betty's house on holidays, and when she and Williams arrived at the house, Martha and Hattie Mae were already there with Betty.  LaTasha testified that Vanessa and Foreman arrived together "[s]hortly thereafter," and Foreman "was a little weird, erratic, talking more because he doesn't usually talk that much."  LaTasha explained that Sammie would go to Betty's house to help cook for the holidays and then go home.  Sammie would "return later to get his plate."

¶12.     LaTasha was coming out of a bathroom in the house when she, like Martha, saw Sammie's "truck pull up."  LaTasha saw Betty go outside, so she followed her out the door.  LaTasha was aware that Sammie and Foreman "didn't get along," but she did not know the reason.

¶13. When LaTasha and Betty walked outside, Sammie and Foreman were already arguing. LaTasha and Betty were "trying to help de-escalate." LaTasha told "them to stop" and asked Foreman "to leave several times." LaTasha testified that she was standing behind her vehicle watching the situation, and Martha was standing between Foreman and Sammie. Betty was standing behind LaTasha. She watched Foreman go to his car, and she "thought he was leaving. But, instead, he reached in and pulled out his gun." LaTasha saw that Foreman "made a step forward and shot." LaTasha was not sure if Foreman had shot Sammie or her mother, Martha, because they were standing close to each other and both fell when Sammie was shot.

¶14. Similar to Williams and Martha, LaTasha stated that she did not see Sammie's gun until he was on the ground. LaTasha also stated that she heard only one shot and never saw Sammie reaching for a gun. She stated that Foreman then left the house, and she watched as her boyfriend, Williams, administered first aid to Sammie.

¶15. The State then called four employees with the Carroll County Sheriff's Office: Sheriff Clint Walker, Deputy Dustin Haddon, Deputy Adam Jennings, and Investigator Banks Tucker.[3] When Sheriff Walker arrived at the scene, Sammie was still alive. Sheriff Walker recovered a .22-caliber shell casing "covered in dirt" in the vicinity of Sammie's body.[4]

---

[3] Sheriff Walker called Banks Tucker a deputy, however, Banks Tucker testified that he is an investigator.

[4] The exact location of the bullet was not determined due to the "gravel, sandy, dirt" that had "probably been kicked or moved during MedStat rendering aid to Mr. Bryant."

Sheriff Walker also received evidence from Deputy Haddon: a "10mm Glock handgun" and a 10mm shell casing. Sheriff Walker testified that the 10mm handgun was discovered near Sammie's hand, and the shell casing was "right below [Sammie's] foot." Deputy Haddon testified that the 10mm shell casing would have ejected outward from the gun if it had been "properly shot."

¶16.   Field interviews of the witnesses were taken at the scene, and the next day, official interviews were taken of Williams, LaTasha, Martha, and Vanessa. Deputy Haddon testified that he left the scene at Betty's house and was instructed to "ride the roads" looking for Foreman. Deputy Haddon also testified that he was at the sheriff's office later that night when Foreman turned himself in. The deputies confiscated a .22-caliber gun from Foreman that evening. Foreman waived his rights and was interviewed by Sheriff Walker, who stated that Foreman told him that he "only returned fire in self-defense." Foreman's car was found the following day behind his mother's house, but no evidence was gathered.

¶17.   The State called the forensic pathologist who performed Sammie's autopsy. He stated that Sammie "died as a result of two gunshot wounds"—one to the head and one to the right arm. The pathologist stated that the wound in the head traveled "through the skull," from "right to left, back to front and upward." On cross-examination, the pathologist admitted that the arm wound could indicate that Sammie's arm was raised toward the source of the bullet; however, he could not be certain.

¶18.   The State also called a firearms expert who testified that the .22-caliber bullets found

7

in the victim could not be conclusively determined to have been fired from Foreman's .22-caliber handgun. The 10mm shell casing, however, was definitely fired from Sammie's 10mm handgun.

¶19. Then the State rested. The defense moved for a directed verdict, which was denied. The defense then proceeded with its case-in-chief, and Foreman took the stand to testify in his defense.

¶20. Foreman stated that he was very sad on Christmas Day of 2022, as it was the day after his grandmother's funeral. He and his girlfriend, Vanessa, were living together in a house on the same road as Betty. He drove Vanessa to Betty's house to drop off some corn and pick up Vanessa's Christmas gift. He did not go inside; Vanessa stayed inside approximately five minutes, and then they left to go to Foreman's mother's house. He stated that he talked with his mother about the funeral, chopped some firewood, and then went back to Betty's house because Vanessa had left her Christmas gift.

¶21. When they arrived at Betty's house, Foreman decided to go inside to "[b]e respectful" to Betty and Martha. Foreman stated that when he went into the house, he made conversation and joked around with people. Then Foreman made a plate of chicken spaghetti, told everyone, "I love them, Merry Christmas," and walked out the door, alone. When he opened the door and walked outside, he watched as Sammie "[p]ulled straight up into the yard real fast" and got out of his car.

¶22. Foreman testified that Sammie looked him "dead in [the] eyes and the man – the first

8

thing" he did was reach "inside his jacket," and he pulled "his gun out." Foreman stated that Sammie held the gun down by his side and said, "I got you now MF'er. I got you M.F. What you wanna do? What you gonna do now?" Foreman stated that Sammie "appeared aggressive, angry, mad, [and] drunk[.]" Foreman said that he was "in fear of [his] life" and responded to him, "You going to kill me, kill me. Send me to my grandma."

¶23. Foreman stated that then LaTasha and Betty came outside, and Betty shielded him with her body and escorted him to his car. Foreman stated that Sammie then started saying, "Why y'all bring mama outside? Why y'all bring mama outside? Take mama in the house." Then, according to Foreman, Sammie said, "I'm fixing to go to the house," and turned to leave. Betty walked Foreman to the hood of Foreman's car, and turned to leave. Sammie then met Foreman at the hood of Foreman's car and swung his pistol at Foreman. LaTasha and Martha then came over and pushed Sammie back, and Foreman got in his car. Foreman stated that Sammie was saying, "I been following you," and "I'm going to kill you."

¶24. When Foreman got in his car, he realized Vanessa was still in the house and decided to go back for her. Foreman said that he was "scared [Sammie was] going to kill me," so he "armed" himself. Foreman testified that when he opened his car door, "first I heard a boom, but he missed me. First I hear boom. Ears, everything go out." He said he turned and could smell gun smoke. Foreman said Sammie was right in front of him with his gun, so Foreman shot. Foreman stated that he only remembered shooting one time. Foreman stated that no one told him to leave the entire time he was at Betty's house, and "everything was good"

9

before Sammie arrived.

¶25. Foreman stated that after the shooting, he told LaTasha, who he says was hollering, "He had a gun on me. He had a gun on me." Then he stated that he was told to leave, so he and Vanessa left. Later that night, he took his .22-caliber pistol to the police and turned himself in.

¶26. On cross-examination, the State inquired why Foreman and Sammie did not get along. Foreman stated that in 2016 or 2017, Sammie had hit him in the face with a vodka bottle and scarred his face. Foreman, however, stated that they had seen each other since the bottle incident, and Foreman "never came back to do anything to him." Foreman's recorded interview with Sheriff Walker was admitted into evidence. Then the defense rested.

¶27. At the close of evidence, the defense moved again for a directed verdict, which was denied. The jury was given instructions for first-degree murder, second-degree murder, heat-of-passion manslaughter, and self-defense manslaughter. The form of the verdict instruction allowed the jury to convict Foreman generally of manslaughter, without specifying which type. The jury returned a verdict against Foreman for manslaughter, and the judge sentenced Foreman to serve twenty years in custody.

¶28. On June 7, 2024, Foreman filed a post-trial motion requesting a judgment notwithstanding the verdict or a new trial. Foreman's motion was denied on June 10, 2024, and Foreman appealed on June 20, 2024.

¶29. On appeal, Foreman challenges both the sufficiency and the weight of the evidence

supporting his conviction.

## ANALYSIS

### I.    Sufficiency of the Evidence

¶30.    "This Court reviews challenges to the sufficiency of evidence de novo." *Ratcliff v. State*, 396 So. 3d 1101, 1104 (¶4) (Miss. 2024) (citing *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018)). "When testing the sufficiency of evidence," we must view "the evidence in the light most favorable to the State." *Moody v. State*, 421 So. 3d 1236, 1238 (¶10) (Miss. 2025) (quoting *Williams v. State*, 305 So. 3d 1122, 1129 (¶15) (Miss. 2020)).

¶31.    Foreman argues that "[t]he evidence was insufficient to prove beyond a reasonable doubt that Foreman did not act in necessary self defense." Foreman's argument is misplaced. Our Supreme Court has directed that "[t]he issue of justifiable self-defense presents a question of *weight and credibility of the evidence* rather than sufficiency and is to be decided by the jury." *Gunn v. State*, 374 So. 3d 1206, 1211-12 (¶20) (Miss. 2023) (internal quotation marks omitted) (quoting *Newell v. State*, 175 So. 3d 1260, 1268 (¶6) (Miss. 2015)). Following the Supreme Court precedent in *Gunn*, Foreman's self-defense arguments will be addressed under his challenge to the weight of the evidence.

¶32.    Foreman presents no other reasons to challenge the sufficiency of the evidence. Three eyewitnesses—LaTasha, Martha, and Williams—saw the argument and heard the shot that killed Sammie. Martha and LaTasha testified to seeing Foreman shoot Sammie. Further, Foreman confessed to shooting Sammie. Undisputed evidence at trial showed that Foreman

and Sammie were known for not getting along, and Foreman testified to a prior altercation with Sammie where Sammie hit him in the face with a bottle, leaving a permanent scar. Accordingly, this Court finds that the evidence was sufficient to support the conviction. Viewing the evidence in the light most favorable to the State, this Court determines that a reasonable juror could have found Foreman guilty of manslaughter beyond a reasonable doubt.

## II. Weight of the Evidence

¶33. Foreman argues that the verdict is against the overwhelming weight of the evidence because the "great weight of the evidence in this case established that Foreman shot [Sammie] upon a reasonably apparent and imminent threat of death or serious bodily harm."

¶34. "A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion." *Jones v. State*, 380 So. 3d 974, 980 (¶14) (Miss. Ct. App. 2024) (citing *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)). This Court will "not disturb the jury's verdict unless it is 'convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Gunn*, 374 So. 3d at 1212 (¶21) (quoting *Newell*, 175 So. 3d at 1268 (¶6)). This Court, however, does not "reweigh the evidence or make witness-credibility determinations[,]" but instead, "[t]he jury is the ultimate trier of fact and the 'final arbiter of a witness's credibility.'" *Spiers v. State*, 361 So. 3d 643, 659 (¶¶55, 57) (Miss. 2023) (quoting *Howell v. State*, 860 So. 2d 704, 731 (¶92) (Miss. 2003); *Little*,

12

233 So. 3d at 292 (¶20)).

¶35. This Court agrees with the State's argument that Foreman's conviction of manslaughter was supported by the evidence under either theory of heat-of-passion manslaughter or imperfect self-defense manslaughter.[5] Both theories originate from Mississippi Code Annotated section 97-3-35 (Rev. 2020), which states that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." *See Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985). The heat-of-passion-manslaughter instruction given to the jury stated that "heat of passion manslaughter is the killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law and not in necessary self-defense." The jury was instructed that "heat of passion" means "a state of violent and uncontrollable rage engendered by a blow or certain other provocation given. . . . The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror."

¶36. The jury heard evidence to support the elements of heat-of-passion manslaughter. The eyewitnesses testified that Sammie and Foreman were outside "hooping and hollering," and

---

[5] The jury's lack of specificity is not reversible error. *Jones v. State*, 334 So. 3d 108, 115 (Miss. 2022) ("The jury's general verdict should be upheld if sufficient evidence supported Jones's manslaughter conviction, even when the jury was instructed on two factual theories." (citing *McCarty v. State*, 247 So. 3d 260 (Miss. Ct. App. 2017))).

they could hear the arguing from inside the house. All the eyewitnesses agreed that Sammie and Foreman did not get along, and the jury heard Foreman explain that Sammie had previously scarred his face by hitting him with a vodka bottle. Williams testified that he went outside to "de-escalate" their arguing and try to calm Sammie down. Even Foreman's testimony supported that Sammie "appeared aggressive, angry, mad, [and] drunk" and that Sammie swung his pistol at Foreman's head. Further, the jury heard Foreman describe how sad he was that day, and the State made a comment in closing arguments that Foreman was in a weakened emotional state from his grandmother's death. The jury also heard Foreman and eyewitness testimony as to the statements between Sammie and Foreman—"You going to kill me, kill me. Send me to my grandma," and "I got you now MF'er. I got you M.F. What you wanna do? What you gonna do now?" Lastly, there is no dispute that Foreman shot Sammie with a deadly weapon, i.e., a handgun.

¶37.   Under the theory of imperfect self-defense manslaughter, the jury was instructed that "an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." The jury heard Foreman's testimony and recorded statement, which supported his defense that he feared for his life and thought Sammie was going to kill him. However, the jury also heard the eyewitnesses' statements that they never saw Sammie's gun until he fell to the ground, that Foreman had ample opportunity to escape, and that Foreman shot Sammie. Further, the autopsy showed that Foreman shot Sammie in the back of his head, meaning

14

Sammie was turned away from Foreman when Foreman fired his gun. While the evidence was conflicting as to whether Sammie was turned and grabbing a weapon, this issue is not for this Court to determine, as we do not reweigh the evidence. *Spiers*, 361 So. 3d at 659 (¶55). We find that evidence supports a jury finding that Foreman shot Sammie under a "bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm."

¶38. Foreman argues that the "overwhelming weight of the evidence indicated that Foreman shot Bryant in reasonable self defense." Under either theory of manslaughter, and under Foreman's self-defense argument, the State was required to "disprove self-defense." *Gunn*, 374 So. 3d at 1211 (¶20); *Woods v. State*, 242 So. 3d 47, 60 (¶56) (Miss. 2018) ("The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted." (quoting *Ambrose v. State*, 133 So. 3d 786, 791 (¶17) (Miss. 2013)).

¶39. Self-defense is a factual issue to be resolved by the jury. *Swanagan v. State*, 229 So. 3d 698, 703 (¶22) (Miss. 2017) ("The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury." (quoting *Wade v. State*, 748 So. 2d 771, 774 (¶11) (Miss. 1999))). It was the jury's prerogative to believe Foreman's testimony or the evidence presented by the State. Credibility of the witnesses is for the jury to determine. *Little*, 233 So. 3d at 289 (¶1). For each piece of evidence that supported Foreman's claim of self-defense, the State provided

15

equal evidence to disprove self-defense. The pathologist testified that Sammie might have had his arm raised toward the source of the bullet, but the State showed that the pathologist could not definitively determine Sammie's position when he was shot. Further, the head wound to Sammie proved that Sammie was turned when Foreman shot him in the back of the head. Eyewitnesses stated that they never saw Sammie's gun until he fell. This Court will not reweigh the evidence. *Id.* We do not sit as a thirteenth juror. *Id.* at 292 (¶20). We find that there was sufficient evidence to support the jury's verdict, and to allow the verdict to stand would not sanction an unconscionable injustice. Foreman's argument is without merit.

## CONCLUSION

¶40. This Court finds no error and affirms Foreman's conviction and sentence.

¶41. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

16